UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>JESSE FRANKLIN SWARTZ,<br><br>  Defendant. | Case No. 15-cr-00351-MEJ-1<br><br>**AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW**[1]<br><br>Sentencing: August 20, 2015 at 10:00 a.m., Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, California |

## INTRODUCTION

Defendant Jesse Franklin Swartz ("Defendant") is charged with violating 41 C.F.R. § 102-74.385 – Disobey Lawful Order, a Class C Misdemeanor. The Court held a bench trial in this case on July 14, 2015. Dkt. No. 3. Having heard the evidence at trial, and having evaluated the substance and credibility of the witnesses, the Court renders the following Findings of Fact and Conclusions of Law, pursuant to Federal Rule of Criminal Procedure 23(c).

## FINDINGS OF FACT

**A.   Background**

1. On March 13, 2015, Federal Protective Service ("FPS") Officer Eric Lunson cited Defendant for a violation of 41 C.F.R. § 102-74.375 – Trespass, a Class C Misdemeanor.

2. On June 10, 2015, the government emailed Defendant a copy of a letter written by the Court's Courtroom Deputy informing Defendant that trial in this matter was scheduled for

---

[1] The sole amendment contained herein is found in Paragraph 50.a.

July 14, 2015 at 10:00 a.m. Defendant replied to that email acknowledging receipt. Choy Decl. ¶¶ 2-3, Dkt. No. 9-1.[2]

3. The government superseded the citation with a new charging instrument by filing a single-count Information on July 6, 2015, charging Defendant with a violation of 41 C.F.R. § 102-74.385 – Disobey Lawful Order, a Class C Misdemeanor. Dkt. No. 1.

4. On July 6, 2015, the government emailed Defendant a copy of the Information and a penalty sheet listing the maximum penalties for the charged offense. Choy Decl. ¶ 4. On July 6 and July 7, Defendant communicated with the government from the same email address to which the charging document and penalty sheet were sent. *Id.* ¶ 5.

5. On July 13, 2015, the government emailed Defendant a copy of its trial brief (Dkt. No. 2), which discussed the crime charged in the Information and set forth what the government intended to prove at trial. Choy Decl. ¶ 6. Later that day, the government received a response to its email from "Arthur Thyme," stating that Defendant had asked him to respond. Attached to the email from "Arthur Thyme" was the government's trial brief. *Id.* ¶ 7.

**B.  Trial Proceedings**

6. On July 14, 2015, at about 10:33 a.m., this matter was called for trial.

7. Law Clerk Soolean Choy and Special Assistant United States Attorney William J. Edelman appeared on behalf of the government.

8. Defendant came forward and identified himself to the Court as "Jesse Swartz." Defendant was not represented by counsel.

9. The Court asked Defendant if he had been informed of the right to seek counsel. Defendant stated that he believed that he had been informed via email.

10. Defendant inquired whether he was entitled to a preliminary hearing pursuant to "Federal Rules of Civil Procedure 58(b)(2)"—an apparent reference to Federal Rule of Criminal Procedure 58, which governs procedures in petty offense matters. The Court told

---

[2] The government moved to supplement the record with the Choy Declaration on July 22, 2015. Dkt. No. 9. The Court hereby GRANTS the government's motion.

Defendant he was not entitled to a preliminary hearing because this is a petty offense matter, and that he was also not entitled to appointed counsel, but that the Court would permit him an opportunity to consult with the Federal Public Defender's office prior to trial if Defendant desired.

11. Defendant cited Rule 58 to the Court again, and the Court again told Defendant that he did not have a right to a preliminary hearing. Defendant disagreed with the Court, stating a third time that he believed he was entitled to a preliminary hearing under Rule 58(b)(2). The Court began to reply that Defendant was not entitled to a preliminary hearing. Defendant interrupted and spoke over the Court in a loud voice, stating "Fair enough, then I object to trial proceeding and I'm not gonna participate in the trial."

12. The Court began to explain to Defendant that he did not have a right to a preliminary hearing. Defendant interrupted the Court again in a loud voice and confrontational tone stating "I do have a right to freedom of speech Ma'am." The Court stated "Yes you do sir." Defendant replied "Thank you" in a forceful and aggressive manner.

13. The Court warned Defendant that he was in a court of law and that he would have to obey the rules of the court. Before the Court could finish its sentence, Defendant interrupted and spoke over the Court in a loud voice, stating "As do you."

14. The Court warned Defendant that the Court was going to have to ask him to be removed, and told him that he was "either going to conduct [him]self in a proper manner or—" Defendant interrupted the Court again, stating loudly and defiantly, "You can hold me in contempt if you want because that's precisely what I have for this building."

15. The Court informed Defendant "We are going to proceed with this trial with you or without you."

16. Defendant responded "Fair enough then I will wait outside while you proceed with trial. I have a notice of appeal typed up. Thank you."

17. Defendant walked away from the podium, gathered his belongings, and walked out of the courtroom.

18. At no time during these proceedings did court security staff approach Defendant, ask him to leave, touch him, escort him, follow him, or otherwise encourage him to leave the courtroom.
19. The courtroom doors remained unlocked during the rest of the trial proceedings, which lasted approximately thirty minutes. There were no physical barriers or impediments to Defendant re-entering the courtroom.
20. Defendant's absence from the courtroom was voluntary.

**C.     Julie Horst's Testimony**

21. Julie Horst works as a law librarian at the Ninth Circuit Court of Appeals library and has been so employed for over five years. Her job responsibilities include, but are not limited to, performing legal research for members of the court and other Ninth Circuit staff, and enforcing rules of conduct in the library.
22. The Ninth Circuit library has promulgated rules of conduct for library patrons, which are posted at the entrance to the library and have been posted in that manner since Ms. Horst has been employed at the library.
23. The library rules state that library staff must be able to provide services "unimpeded by harassment, abuse, interruptions, or distractions, or fear for their personal safety," and provide a non-exhaustive list of specific "standards of conduct," including:
    a. No eating or drinking.
    b. No verbal abuse or harassment of others.
    c. No drunk or disorderly conduct.
    d. No loud talking or outbursts.
    e. No threatening acts, gestures, or words.
    f. Packages, briefcases, and other containers in the immediate possession of visitors are subject to inspection.
24. When a patron breaks a library rule, the library staff's response varies based on the specifics of the situation. Remedial actions range from reminding the patron of the rule or issuing a warning, to asking that the patron leave or be removed.

25. Ms. Horst was working at the library on the afternoon of March 13, 2015. Defendant, who Ms. Horst recognized from his "off and on" usage of the library since 2013, was also present in the library. Ms. Horst knew Defendant by two different names; he self-identified as Frank Wright when he logged into the library's guest register, but was also known by the name Jesse Swartz.

26. Ms. Horst was familiar with Defendant from several interactions with him prior to March 13, 2015. During those interactions, Defendant made demands, broke rules, and generally caused trouble. His demeanor on those prior occasions was unpredictable, erratic, impolite, and very difficult. During one incident, Ms. Horst witnessed Defendant being physically aggressive; after being reminded of a rule, Defendant erupted by yelling and raising his fists at a staff member.

27. On March 13, 2015, Defendant left the library and then returned carrying what looked like a portable coffee cup.

28. Ms. Horst asked Defendant if he had liquid in the cup.

29. Defendant shouted no, then paused, then shouted again, asking Ms. Horst for her name. His tone was angry and scary.

30. Feeling frightened, Ms. Horst responded that her name was "Frances." "Frances" was a name library staff members had discussed as a "safe name" to use when they were scared and did not want to use a real name.

31. Ms. Horst concluded that after Defendant's angry interaction with her she could not perform her work with Defendant present that day, and that Defendant had broken library rules. She called court security guards to remove Defendant from the library.

32. Ms. Horst retreated to her office and waited for Defendant to be removed.

33. An officer came to speak with her in her office. She told the officer what happened.

34. Ms. Horst was reluctant to testify in this proceeding because Defendant frightens her.

**D.  Officer Eric Lunson's Testimony**

35. Officer Eric Lunson has worked as an officer for the Department of Homeland Security's Federal Protective Service for approximately four years. His general job duties as an FPS

5

officer are to protect federal employees and federal property. He patrols federal buildings in downtown San Francisco.

36. The Ninth Circuit Court of Appeals courthouse at 95 7th Street, San Francisco, California is federal property. There is a visible notice posted at the sole public entrance to the Ninth Circuit courthouse indicating that General Services Administration ("GSA") regulations—including the regulation that the lawful direction of a police officer must be obeyed—are enforced on the property. The notice has been posted since the building was opened.

37. Officer Lunson was on duty the afternoon of March 13, 2015. Around 1:30 p.m., he and other officers responded to a radio call of a disorderly subject at the Ninth Circuit Court of Appeals law library.

38. When Officer Lunson arrived at the library, he saw Defendant seated at a table to the left of the library entrance. Officer Lunson and another officer approached Defendant and informed Defendant that someone had reported a disorderly individual in the library. Defendant responded in an aggressive and belligerent tone, "Whoever told you that is a liar." Officer Lunson instructed Defendant to wait while Officer Lunson conducted his investigation.

39. Officer Lunson located the law librarian in her office, which was behind a gate separating the office area from the public area. She described the incident with Defendant to Officer Lunson. Officer Lunson also spoke with another court employee who had witnessed the confrontation. After those conversations, Officer Lunson concluded that Defendant should be removed from the building. Officer Lunson returned to where Defendant was seated.

40. Officer Lunson informed Defendant that Defendant was no longer welcome in the building and that he needed to leave. Officer Lunson ordered Defendant to leave and told him that he would not be allowed to return for the rest of the day.

41. Defendant responded in an aggressive and belligerent manner, "No I'm not leaving, you can arrest me and you can cite me, but I'm not leaving." Officer Lunson placed Defendant in handcuffs.

42. Officer Lunson searched Defendant's bag for his identification. Defendant informed Officer Lunson that he had a driver's license in the bag. Officer Lunson found a California driver's license for Jesse Swartz. After comparing Defendant's appearance to the biographical information and photograph on the driver's license, Officer Lunson was satisfied that Defendant was Jesse Swartz. Officer Lunson wrote Defendant a citation for trespassing.

43. Officer Lunson escorted Defendant out of the building and asked Defendant to sign the citation, explaining that the signature was not an admission of guilt but a promise to appear. Defendant refused to sign the citation. Officer Lunson noted the refusal on the citation and released Defendant outside of the courthouse after giving him the citation.

44. Officer Lunson was in the courtroom when Defendant approached the podium and made his appearance. Officer Lunson identified Defendant as the man that he cited at the courthouse library on March 13, 2015.

## CONCLUSIONS OF LAW

A.  **Trial Proceedings**

45. Defendant was not entitled to appointed counsel in this petty offense prosecution for which the Court informed Defendant he had no right to counsel, reflecting the Court's pre-trial determination that no sentence of custody would be imposed. *See Alabama v. Shelton*, 535 U.S. 654, 657, 661-62 (2002); Fed. R. Crim. P. 58(a)(3), (b)(2)(C); *cf.* N.D. Cal. General Order 2 ¶ VI.B.1 (appointed counsel in petty offense prosecution is "discretionary").

46. Defendant knowingly and voluntarily waived his right to further arraignment by leaving the courtroom as he was being advised of his rights, and Defendant was not prejudiced by any lack of further advisement. *See United States v. Romero*, 640 F.2d 1014, 1015 (9th Cir. 1981) (lack of formal arraignment proceedings of no consequence where defendant received a copy of charging document and was not prejudiced); *United States v. Riley*, 2008 WL 2741121, at *2 (D.N.H. July 10, 2008) (collecting cases for the proposition that "technical failure to comply with [arraignment procedures] does not affect a substantial right as long as the accused has sufficient notice of the charges, had adequate opportunity

to prepare a defense, and the technical lack of formal arraignment did not prejudice the defendant").

    a. Defendant received a copy of the government's trial brief, charging document, and other paperwork setting forth the maximum penalties for the charged offense.

    b. Defendant made statements to the Court indicating that he read Federal Rule of Criminal Procedure 58(b)(2), which describes his rights as a defendant in a petty offense prosecution.

    c. Defendant's statements made in various civil court filings (of which the Court takes judicial notice) indicate that Defendant knew that the charges in this case related to his refusal to leave the Ninth Circuit law library on March 13, 2015, and he therefore suffered no prejudice in preparing his defense. *See Wright v. U.S. Dep't of Homeland Security*, No. 15-cv-3204, Dkt. No. 1 at 4:3-8 (N.D. Cal. July 10, 2015) (citing *Wright v. U.S. Interagency Council on Homelessness*, No. 15-15052, Dkt. No. 29-1 (9th Cir. Apr. 21, 2015)).

47. Defendant knowingly and voluntarily waived his right to be present during trial by appearing at trial proceedings and then leaving the courtroom after being advised by the Court that trial would proceed in his absence. *See* Fed. R. Crim. P. 43(c)(1)(A) ("A defendant who was initially present at trial . . . waives the right to be present . . . when the defendant is voluntarily absent after the trial has begun, regardless of whether the court informed the defendant of an obligation to remain during trial."); *cf. Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) ("A criminal defendant who has competently invoked the right to appear pro se may mount a defense consisting of nothing more than a protest against the court's legitimacy and a refusal to attend trial, and has no Sixth Amendment right to be protected from the prejudice that may result."); *United States v. Lawrence*, 161 F.3d 250 (4th Cir. 1998) ("The next claim of [appellant] is that the district court committed reversible error when it allowed him, a criminal defendant representing himself, to remove himself from the courtroom after the time the case was called and the trial began, but before the jury was empaneled, and to remain absent throughout the trial until he was

returned to the courtroom for the return of the verdict. . . . Because [appellant] was present at the beginning of his trial and voluntarily absented himself, there is no error in this case.").[3]

**B.  The Charged Offense**

48. Title 41 of the Code of Federal Regulations, Section 102-74.385 requires "[p]ersons in and on [federal] property [to] at all times comply with official signs of a prohibitory, regulatory or directory nature and with the lawful direction of Federal police officers and other authorized individuals."

49. Notice in a form complying with 41 C.F.R. § 102-74.365[4] was posted in a conspicuous place at the public entrance to 95 7th Street, San Francisco, which informed Defendant that he was subject to GSA regulation 41 C.F.R. § 102-74.385 while inside of the building. *See* 40 U.S.C. § 1315(c).

50. The government proved each element of a violation of 41 C.F.R. § 102-74.385 beyond a reasonable doubt:

   a. The Government proved beyond a reasonable doubt that FPS Officer Lunson issued a lawful direction to Defendant to leave the library building. Officer Lunson testified credibly that his order was based on a good-faith investigation of the incident and information provided by witnesses, and the order was therefore not arbitrary and was issued in furtherance of promoting public order. *See People v. Galpern*, 259 N.Y. 279, 284-285 (1932) (refusal to obey an order is justified only where the circumstances show conclusively that the police officer's direction was purely arbitrary and was not calculated in any way to promote the public order);

---

[3] Though not in the context of a *pro se* defendant with no right to appointed counsel, the Ninth Circuit has repeatedly held that a defendant's voluntary absence from trial waives his Sixth Amendment right to participate in trial proceedings. *See United States v. Houtchens*, 926 F.2d 824, 826-27 (9th Cir. 1991) ("A defendant may be tried in absentia when, after sufficient notice, he or she knowingly and voluntarily fails to appear for trial."); *United States v. Marotta*, 518 F.2d 681, 684 (9th Cir. 1975); *cf. Charles v. Farwell*, 263 F. App'x 644, 645 (9th Cir. 2008); *Brewer v. Raines*, 670 F.2d 117, 120 (9th Cir. 1982).

[4] "Federal agencies must post the notice in the Appendix to this part at each public entrance to each Federal facility." 41 C.F.R. § 102-74.365.

*State v. Brennan*, 344 N.J. Super. 136, 145 (App. Div. 2001) (defendant could not lawfully disobey order based on disagreement with whether it was appropriate to eject him from a public meeting). Additionally, because Officer Lunson's direction to Defendant was in response to Defendant's unruly behavior in the library that "impede[d] or disrupt[ed] the performance of official duties by Government employees," namely, the librarian, the direction was lawfully issued to "preserve the normal functioning of federal facilities" in circumstances encompassed within the other regulations of 41 C.F.R., Part 102-74, Subpart C. *United States v. Stansell*, 847 F.2d 609, 614 (9th Cir. 1988).

b. The government proved beyond a reasonable doubt that Defendant refused to comply with Officer Lunson's lawful direction by not leaving the library and by announcing his intentional defiance of the order.

## CONCLUSION

Based on the above findings, the Court concludes the government has met its burden of proving beyond a reasonable doubt that Defendant violated 41 C.F.R. § 102-74.385. Accordingly, the Court finds Defendant **GUILTY** of violating Title 41 of the Code of Federal Regulations, Section 102-74.385.

Defendant is **ORDERED** to appear for sentencing on August 20, 2015 at 10:00 a.m. in Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, California.

**IT IS SO ORDERED.**

Dated: August 4, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge